IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CHRISTOPHER REEDY, and T.C. HOLDINGS DELAWARE, INC., Individually and on Behalf of Those Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PHILLIPS 66 COMPANY,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT – CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

## NATURE OF CASE

1. This is a class action on behalf of individuals and entities who purchased contaminated aviation gas from Phillips 66 Company ("Phillips"). Phillips holds itself out as a distributor of "top-quality" aviation fuel, but in early 2017, Phillips distributed contaminated aviation gas to airports throughout the country. The contaminated aviation gas contained particles that threaten plane-engine integrity, placing the lives of pilots and passengers in danger. As a result of Phillips' distribution of contaminated fuel, Plaintiff and the Class have incurred damages, including money spent on contaminated gas and costs stemming from additional aircraft inspections and maintenance required to remedy the harm caused by Phillips' wrongdoing.

## PARTIES

2. Plaintiff Christopher Reedy is a Kansas resident.

1

3. Plaintiff T.C. Holdings Delaware, Inc. ("T.C. Holdings") is a Delaware corporation with its principle place of business in Kansas.

4. Defendant Phillips is a Delaware corporation with its principal place of business in Houston, Texas. Phillips may be served through its registered agent, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), in that:

   a. The combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs.

   b. At least one Class member is a citizen of a state other than Phillips's state of citizenship.

   c. Upon information and belief, there are over 100 Class members in the proposed Class.

6. Personal jurisdiction over Defendant is proper because Defendant:

   a. Is headquartered and does and has done business in Texas and within this District, with the claims asserted herein arising from such business; and

   b. Committed tortious acts that are subject of the Complaint in Texas, and within this District.

7. Venue in this District is proper under 28 U.S.C. § 1391 because Phillips 66 is subject to personal jurisdiction in this District and therefore resides in this District for the purposes of determining venue.

## FACTS APPLICABLE TO ALL COUNTS

**A. Phillips Holds Itself Out as a Provider of the "Highest Quality" Aviation Gas**

8. Phillips produces, refines, markets, and distributes jet fuel and aviation gas ("avgas").

9. Phillips markets itself as a premier provider of high-quality avgas. On its website, Phillips states that "[p]ilots and FBOs have been relying on Phillips 66 Aviation for more than 85 years as their source for the highest quality jet and aviation gasoline fuels."[1]

10. Phillips has various channels for distributing its avgas. Fixed-based operators ("FBOs") are one of Phillips' primary distribution avenues. FBOs are companies that provide services—including fueling—at airports owned by others, such as local governments. Phillips distributes its avgas to FBOs or their affiliates, and the FBOs then sell the avgas to aircraft owners and pilots.

11. Phillips' website describes the company's relationship with FBOs as follows: "Phillips 66 Aviation supports top flight FBOs that will serve you almost anywhere across the nation with the most advanced fuel available."[2]

12. The website further states that Phillips "continues to stay ahead of trend, surpassing industry standards in the sky and space, continuing to earn the title of 'The Most Trusted Wings in Aviation®.'"[3]

---

[1] http://www.phillips66.com/EN/products/business/aviation/Pages/index.aspx. Last visited on September 28, 2017.
[2] http://www.phillips66aviation.com/?gclid=EAIaIQobChMInsy51afI1gIVDotpCh03sAi7EAAYASAAEgKng_D_BwE#/about?from=FBO. Last visited on September 28, 2017.
[3] *Id.*

### B. FBOs in Kansas Discover Contaminated Phillips Avgas

13. Despite Phillips' claims that it provides high-quality avgas that exceeds aviation-industry standards, in early 2017, Phillips distributed contaminated aviation gas (one hundred octane low lead, or "100 LL") to FBO locations throughout the country.

14. In early or mid-September 2017, Signature Flight Support ("Signature"), an FBO with locations throughout the country, discovered contaminated Phillips avgas at its Wichita, Kansas, and Olathe, Kansas locations.

15. Signature then halted the sale of Phillips' avgas at both locations.

### C. Contaminated Phillips Avgas is Discovered in Locations in Other States

16. By mid-September, avgas consumers throughout the country were reporting online that Phillips' avgas was contaminated and unavailable for purchase from FBOs as a result of contamination.

17. To address the Phillips contamination, Signature stopped selling Phillips avgas to consumers at approximately 20 locations.

18. Many of these locations emptied the contaminated gas from their tanks, scrubbed the tanks, and refilled the tanks with non-contaminated avgas.

19. Upon information and belief, Phillips was, and is, aware of the contaminated avgas but has failed to notify or warn the public, including those who purchased the contaminated avgas.

20. Because the contamination was limited to Phillips' avgas and was not found in other distributors' avgas, and because the contamination was found in locations in various states,

the contamination occurred during Phillips' refining process or, in any event, sometime before Phillips distributed the avgas to the FBOs.

### D. Contaminated Avgas Risks Serious Property Damage and Injury to Purchasers

21. Distributors of avgas and jet fuel must implement appropriate quality-control methods to ensure that contaminated gas and fuel do not reach the market.

22. When a company fails to implement or adhere to proper quality-control procedures—as Phillips did here—avgas purchasers are put at significant risk. This risk includes damage to the systems of aircrafts worth millions of dollars and, more significantly, serious injury or death for those onboard the aircraft.

23. The consequences of flying with contaminated avgas can be catastrophic and deadly. Because of this, when pilots, plane mechanics, and plane owners discover contaminated avgas, they must flush their gas tanks and perform thorough plane inspections and maintenance. Plaintiffs and the Class are entitled to compensation from Phillips for the costs of these services, along with the cost of purchasing contaminated avgas.

## PLAINTIFFS REEDY AND T.C. HOLDINGS

24. Plaintiff Reedy is a trained pilot and a shareholder of T.C. Holdings.

25. Plaintiff T.C. Holdings owns a Beechcraft Baron aircraft, registration number N2278S. T.C. Holdings also owns a Decathlon aircraft, registration number N660CM.

26. On or about August 23, 2017, Reedy spent $91.04 to purchase 23.95 gallons of 100LL Phillips avgas for the Decathlon aircraft at the Miami County Airport in Paola, Kansas. Reedy had no knowledge that the avgas was in any way defective or contaminated.

27. On or about August 30, 2017, Reedy spent $390.37 to purchase 98.19 gallons of 100LL Phillips avgas for the Baron aircraft at the Miami County Airport in Paola, Kansas. Reedy had no knowledge that the avgas was in any way defective or contaminated.

28. On September 12, 2017, Reedy and Dave Cochran, an FAA-certified mechanic, took samples of the Phillips avgas from the wings of the Baron and Decathlon aircrafts.

29. Reedy and Cochran observed contamination, in the form of solid particles, in the samples from the Baron and Decathlon aircrafts. The particles appear to be some form of metal particulate, although Plaintiffs' investigation into the properties of the contaminant is ongoing.

30. Because of the serious and life-threatening risk posed by contaminated avgas, along with the serious risk of property damage, Reedy and Cochran grounded the Baron and Decathlon aircrafts until the contaminated avgas could be flushed from the tanks and the planes could undergo thorough inspections and maintenance.

31. Reedy and T.C. Holdings have suffered damages as a result of Phillips' conduct, including (1) amounts spent on contaminated avgas that had to be flushed from their aircrafts and (2) costs of maintenance and repair that were necessary to account for the presence of contaminated avgas in the aircrafts, and to ensure the plane remained safe for further use.

## CLASS ACTION ALLEGATIONS

32. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of themselves and all others similarly situated members of the Class, which is defined as follows:

> **Nationwide Class:**
>
> All persons and/or entities who purchased Phillips' contaminated avgas in the United States and all owners of aircrafts that were filled with Phillips' contaminated avgas in the United States.

Plaintiffs also bring this action on behalf of themselves and all other similarly situated members of the Kansas sub-class, which is defined as follows:

> **Kansas Class:**
>
> All persons and/or entities who purchased Phillips' contaminated avgas in Kansas and all owners of aircrafts that were filled with Phillips' contaminated avgas in Kansas.

33. Excluded from the Class are (i) Defendant and Defendant's legal representatives, predecessors, successors, and assigns; (ii) the judicial officers to whom this case is assigned; and, (iii) any member of the immediate families of excluded persons.

34. All members of the Class suffered economic harm.

35. The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of members.

36. The injuries to the Class members flow, in each instance, from a common nucleus of operative facts. In all cases, Defendant provided the Class members with defective avgas.

37. There are questions of law and fact common to the members of the Class, which predominate over any questions that affect only individual Class members. The predominant common questions include, without limitation:

    a. Whether the avgas sold by Defendant was contaminated;

b. Whether Defendant failed to properly test the avgas and apply quality control procedures;

c. Whether Defendant failed to warn of the dangers of this avgas;

d. Whether Defendant misrepresented the quality of its avgas;

e. Whether Defendant violated the Kansas Consumer Protection Act;

f. Whether Defendant breached express warranties with Plaintiffs and the Class;

g. Whether Defendant failed to disclose and/or concealed the contaminated avgas from Plaintiffs and the Class;

h. Whether Plaintiffs and the Class are entitled to equitable relief or other relief, and the nature of such relief; and

i. Whether Plaintiffs and the Class sustained damages.

38. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

39. Plaintiffs will fairly and adequately represent the interests of the Class members. They have retained counsel experienced in consumer class action litigation. Plaintiffs have no interests that conflict with, or are adverse to, those of the Class.

40. A class action is superior to other alternative methods of adjudicating this dispute. The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

41. Absent a class action, there is a substantial risk that Phillips would retain the benefits of its wrongdoing. Individual litigation, even if it were practical to be brought on an individual basis, would also increase the delay and expense to all parties and to the court system by causing repetitive proceedings, motion practice and discovery in several different courts. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court to all Class members.

42. Plaintiffs anticipate no difficulty in managing this litigation as a class action.

## CAUSES OF ACTION

### COUNT I — STRICT PRODUCTS LIABILTY (Nationwide Class)

43. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

44. Plaintiffs and the Class purchased avgas manufactured and distributed by Defendant.

45. Class members are in the Class of persons that Phillips should have reasonably foreseen as being subject to the harm caused by the defective product.

46. The defective product, avgas, was expected to and did reach the Class members without substantial alteration in the condition in which it was sold by Phillips.

47. The defects in the avgas could not be contemplated by any reasonable person expected to use the avgas, and therefore presented an unreasonably dangerous situation for expected purchasers of the avgas even though the avgas was used by expected purchasers in a reasonable manner.

48. The avgas was defective and inherently and unreasonably dangerous and unsafe for its intended use because it harmed the aircrafts in which it was used. The avgas failed to perform in the manner reasonably to be expected in light of its nature and intended function.

49. Defendant should have foreseen that the dangerous condition of the defective avgas would subject Plaintiffs and the Class to harm from the defective avgas.

50. Plaintiffs and the Class have used the avgas reasonably and as intended, and have suffered damages through no fault of their own.

51. As a direct and proximate cause of the unreasonably dangerous condition of the avgas, Plaintiffs and others suffered property damage and economic loss.

## COUNT II — NEGLIGENCE (Nationwide Class)

52. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

53. Defendant owed Plaintiffs and the Class a duty of care to offer products free from deleterious and harmful effects.

54. Defendant breached that duty of care by selling products that were harmful and deleterious:

   a. Without conducting adequate quality control and testing; and

   b. Without using proper manufacturing and production practices

55. Defendant's conduct was negligent, careless, or reckless.

56. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class suffered property damage and economic loss.

## COUNT III — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (Nationwide Class)

57. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

58. Under the Uniform Commercial Code ("UCC") there is an implied warranty in the sale of goods by a merchant that the goods shall be merchantable.

59. Under UCC § 2-314(2), "[g]oods to be merchantable must be at least such as . . .(b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and . . . (f) conform to the promises or affirmations of fact made on the container or label if any."

60. Phillips is a seller with respect to the defective avgas that it produced, refined, distributed, and sold to Class members.

61. The avgas sold by Phillips was below fair and average quality within its description.

62. The avgas sold by Phillips was not fit for the ordinary purpose for which avgas is used.

63. Phillips had actual notice that it had distributed and sold off-specification avgas that was defective and capable of causing damage to gas-powered engines.

64. Defendant is liable to Plaintiffs and other Class members for all direct and consequential damages resulting from this breach, including, but not limited to the purchase price of the avgas and the damage the avgas caused to their aircrafts and other property.

### COUNT IV — BREACH OF EXPRESS WARRANTY (Nationwide Class)

65. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

66. Under UCC § 2-313, the representations in Defendant's advertising and at the point of sale regarding the quality of its avgas created an express warranty that the contents shall conform to the representations.

67. Phillips expressly warranted that its avgas was suitable for its intended purpose.

68. Phillips expressly warranted that its avgas was of the "highest quality."

69. Members of the class relied upon these representations and others, which became a part of the basis of the bargain.

70. Defendant breached those express warranties, as described above.

71. Defendant is liable to Plaintiffs and other Class members for all direct and consequential damages resulting from this breach, including, but not limited to the purchase price of the avgas and the damage the avgas caused to their aircraft and other property.

### COUNT V— VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT
### (Kansas Sub-Class Only)

72. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

73. Plaintiff Reedy is a "consumer" as defined by the Kansas Consumer Protection Act.

74. Phillips engaged in unconscionable and deceptive acts and practices, by:

   a. Producing and distributing avgas that was defective or contaminated and unfit for consumption;

   b. Representing that its avgas was of high quality when that was not the case; and

   c. Distributing avgas without properly testing it or applying appropriate quality control processes.

75. The unfair and deceptive actions of Defendant were committed in connection with consumer transactions; namely, the distribution and sale of contaminated avgas.

76. Reedy and others suffered damages as a result of Defendant's actions.

77. Defendant is liable to Plaintiffs and the Class members for all statutory, direct and consequential damages, and fees and costs, resulting from this breach, including but not limited to the purchase price of avgas and the damage the avgas caused to their aircrafts and other property.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class against Defendant, for:

A. An Order certifying the case as a class action, appointing Plaintiffs as Class Representatives and appointing Plaintiffs' Counsel as Class Counsel;

B. Compensatory damages;

C. Consequential damages;

D. Costs of suit, including reasonable attorneys' fees and expenses;

E. Pre-judgment and post-judgment interest; and

F. Such further relief as the Court may deem just and proper.

Dated: September 28, 2017

Respectfully submitted,

POTTS LAW FIRM, LLP

*/s/ Douglas R. Salisbury*

Douglas R. Salisbury
Texas Bar No. 24083782
Federal Bar No. 2809113
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Phone: 713-963-8881
Fax: 713-583-5388
E-mail: dsalisbury@potts-law.com

John F. Edgar*
EDGAR LAW FIRM LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105
Phone: 816-399-5158
Fax: 816-531-3322
E-mail: jfe@edgarlawfirm.com
(Of Counsel)

and

Matthew T. Swift*
Texas Bar No. 24075137
EDGAR LAW FIRM LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105
Phone: 816-399-5158
Fax: 816-531-3322
E-mail: mts@edgarlawfirm.com
(Of Counsel)

*Motion for Pro Hac Vice to be Submitted