IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER REEDY and T.C. HOLDINGS DELAWARE, INC., Individually and On Behalf of THOSE SIMILARLY SITUATED, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-17-2914 |
| v. | § § | |
| PHILLIPS 66 COMPANY, | § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Christopher Reedy ("Reedy") and T.C. Holdings Delaware, Inc. ("T.C. Holdings") (together, "Plaintiffs") bring this action against Phillips 66 Company ("Phillips" or "Defendant") for strict products liability, negligence, breach of implied warranty of merchantability, breach of express warranty, and violation of the Kansas Consumer Protection Act ("KCPA"), individually and on behalf of all others similarly situated.[1] Pending before the court are Defendant Phillips 66 Company's Motion to Dismiss Plaintiffs' Claims ("Motion to Dismiss") (Docket Entry No. 6) and Defendant Phillips 66 Company's Motion to Dismiss or Strike Plaintiffs' Class Allegations ("Motion to Strike") (Docket

---

[1] See Complaint - Class Action ("Plaintiffs' Complaint"), Docket Entry No. 1. Plaintiffs' first four causes of action are brought on behalf of a nationwide class. The cause of action under the KCPA is brought on behalf of a Kansas sub-class.

Entry No. 7). For the reasons stated below, the Motion to Dismiss will be granted in part and denied in part, and the Motion to Strike will be granted in part and denied in part.

## I. Factual Allegations and Procedural History

Phillips produces, refines, markets, and distributes jet fuel and aviation gas ("avgas").[2] Phillips distributes avgas to fixed-based operators ("FBOs") and the FBOs then sell the avgas to aircraft owners and pilots.[3] Plaintiff Christopher Reedy is a trained pilot and a shareholder of plaintiff T.C. Holdings.[4] T.C. Holdings owns a Beechcraft Baron aircraft and a Decathlon aircraft.[5] Around August 23, 2017, Reedy spent $91.04 to purchase 23.95 gallons of Phillips avgas for the Decathlon aircraft at the Miami County airport in Paola, Kansas.[6] Around August 30, 2017, Reedy spend $390.37 to purchase 98.19 gallons of Phillips avgas for the Baron aircraft at the same airport.[7] On September 12, 2017, Reedy and Dave Cochran, an FAA-certified mechanic, took samples of the Phillips avgas from the Baron and Decathlon aircrafts and

---

[2]Plaintiffs' Complaint, Docket Entry No. 1, p. 3 ¶ 8.

[3]Id. ¶ 10.

[4]Id. at 5 ¶ 24.

[5]Id. ¶ 25.

[6]Id. ¶ 26.

[7]Id. at 6 ¶ 27.

observed contamination in the form of solid particles.[8] Plaintiffs allege that "[b]ecause of the serious and life-threatening risk posed by contaminated avgas, along with the serious risk of property damage, Reedy and Cochran grounded the Baron and Decathlon aircrafts until the contaminated avgas could be flushed from the tanks and the planes could undergo thorough inspections and maintenance."[9]

In September of 2017 an FBO, Signature Flight Support ("Signature"), discovered contaminated Phillips avgas at its Wichita and Olathe, Kansas, locations and it halted the sale of Phillips' avgas there.[10] By mid-September of 2017 Signature stopped selling Phillips avgas at approximately twenty locations due to contamination.[11] Plaintiffs allege that Reedy had no knowledge that the avgas he purchased in August was defective or contaminated.[12]

Plaintiffs filed their Complaint on September 28, 2017, bringing class action allegations pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).[13] Plaintiffs allege that Phillips' distribution of contaminated fuel caused damages including the amount spent on the contaminated avgas and the

---

[8] Id. ¶¶ 28-29.

[9] Id. ¶ 30.

[10] Id. at 4 ¶¶ 14-15.

[11] Id. ¶¶ 16-17.

[12] Id. at 5-6 ¶¶ 26-27.

[13] Id. at 6 ¶ 32.

maintenance and repair costs.[14] Plaintiffs bring causes of action for strict products liability, negligence, breach of implied warranty, and breach of express warranty on behalf of themselves and all others similarly situated in a Nationwide Class.[15] Plaintiffs bring a cause of action for violations of the Kansas Consumer Protection Act ("KCPA") on behalf of themselves and all other similarly situated members of a Kansas subclass.[16] Defendant filed its Motion to Dismiss and Motion to Strike on November 7, 2017.[17]

## II.  Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) arguing that Plaintiffs lack standing to assert any of their claims.  Defendant also moves to dismiss under Rule 12(b)(6) arguing that even if Plaintiffs have standing to pursue their claims, Plaintiffs have failed to state a claim for products liability and breach of express warranty, T.C. Holdings has failed to state a claim under the KCPA and for breach of implied warranty, and that Plaintiffs otherwise fail to properly state a claim under the KCPA.[18]

---

[14]Id. ¶ 31.

[15]Id. at 7 ¶ 32.

[16]Id.

[17]See Motion to Dismiss, Docket Entry No. 6; Motion to Strike, Docket Entry No. 7.

[18]See Motion to Dismiss, Docket Entry No. 6, pp. 11, 15, 19, 20.

## A. Standing

Standing and class certification must both be addressed on a claim-by-claim basis. James v. City of Dallas, Texas, 254 F.3d 551, 563 (5th Cir. 2001). In a class action the general rule remains that standing should be addressed before other matters because it goes to the court's power to hear a claim, and Plaintiffs have not demonstrated that a different rule should apply in this case. See Cole v. General Motors Corp., 484 F.3d 717, 721 (5th Cir. 2007) ("Before we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction."); Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383, 390 (5th Cir. 2003) ("It goes without saying that before seeking certification, representative plaintiffs still must establish standing."); James, 254 F.3d at 562-63. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." James, 254 F.3d at 562-63 (quoting Sosna v. Iowa, 95 S. Ct. 553, 559 (1975)). "If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class." Id. at 563 (citing O'Shea v. Littleton, 94 S. Ct. 669, 675 (1974)).

### 1.    Standard of Review - Fed. R. Civ. P. 12(b)(1)

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred

by Congress.'" <u>Halmekangas v. State Farm Fire and Casualty Co.</u>, 603 F.3d 290, 292 (5th Cir. 2010). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." <u>In re FEMA Trailer Formaldehyde Products Liability Litigation</u>, 668 F.3d 281, 286 (5th Cir. 2012) (quoting <u>Home Builders Association, Inc. v. City of Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[S]tanding and ripeness are essential components of federal subject-matter jurisdiction." <u>In re Jillian Morrison, L.L.C.</u>, 482 F. App'x 872, 875 (5th Cir. 2012).

When facing a challenge to subject matter jurisdiction and other challenges on the merits, courts must consider the Rule 12(b)(1) jurisdictional challenge before addressing the merits of the claim. <u>Alabama-Coushatta Tribe of Texas v. United States</u>, 757 F.3d 484, 487 (5th Cir. 2014). "[T]he party asserting federal subject-matter jurisdiction[] has the burden of proving that this requirement has been met. <u>Id.</u> "'Subject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim.'" <u>Energytec, Inc. v. Proctor</u>, 516 F. Supp. 2d 660, 671 (N.D. Tex. 2007) (citations omitted).

When evaluating jurisdiction, courts distinguish between "facial" and "factual" attacks under Rule 12(b)(1). <u>See Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981). "[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in

-6-

the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction . . . the defendant submits affidavits, testimony, or other evidentiary materials." <u>Id.</u> Because Defendant's motion relies only on the allegations in the Complaint the motion is a facial attack and "[t]his Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Williams v. Certain Underwriters at Lloyd's of London</u>, 398 F. App'x 44, 46 (5th Cir. 2010) (quotations omitted). Lack of standing must be determined based on the complaint alone. <u>Barrera-Montenegro v. United States</u>, 74 F.3d 657, 659 (5th Cir. 1996).

Standing requires that: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest . . .;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 112 S. Ct. 2130, 2136 (1992) (citations and quotations omitted). The court must evaluate the Plaintiffs' Article III standing on each claim. <u>Fontenot v. McCraw</u>, 777 F.3d 741, 746 (5th Cir. 2015).

2.  <u>Analysis</u>

Plaintiffs seek compensation for "(1) amounts spent on contaminated avgas that had to be flushed from their aircrafts and (2) costs of maintenance and repair that were necessary to account for the presence of contaminated avgas in the aircrafts, and to ensure the plane[s] remained safe for further use."[19]  Defendant argues that Plaintiffs lack standing to pursue their claims because they fail to satisfy the injury-in-fact requirement.[20] Specifically, Defendant argues that Plaintiffs have not alleged actual harm, that their alleged future harm is too speculative to support standing, and that costs incurred to protect against future risk cannot confer standing.[21]

a.   Actual Harm

Plaintiffs allege that "avgas purchasers are put at significant risk" that "includes damages to the systems of aircrafts . . . and . . . serious injury or death for those onboard the aircraft."[22]  Plaintiffs allege that "[b]ecause of the serious and life-threatening risk posed by contaminated avgas, along with the serious risk of property damage, Reedy and Cochran grounded the Baron and Decathlon aircrafts until the contaminated avgas could be

_____

[19]Plaintiffs' Complaint, Docket Entry No. 1, p. 6 ¶ 31.

[20]<u>See</u> Motion to Dismiss, Docket Entry No. 6, pp. 12-15.

[21]<u>Id.</u>

[22]Plaintiffs' Complaint, Docket Entry No. 1, p. 5 ¶ 22.

-8-

flushed from the tanks and the planes could undergo thorough inspections and maintenance."[23]  Plaintiffs have not alleged any actual harm to an aircraft, pilot, or any other person from the use of Phillips' contaminated avgas.  Therefore, Plaintiffs' alleged injury does not "actually exist." Clapper v. Amnesty International USA, 133 S. Ct. 1138, 1147 (2013).

      b.   Economic Harm

Plaintiffs argue that they have alleged "the actual economic harm suffered by Plaintiff Reedy when he paid for high-quality avgas and instead received contaminated avgas."[24] Defendant argues that economic harm alone is not sufficient to confer standing in a products liability case.[25]  The Fifth Circuit's analysis in Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002), is applicable to this case:

> The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law.  The wrongs they allege — failure to warn and sale of a defective product — are products liability claims.  Yet, the damages they assert—benefit of the bargain, out of pocket expenditures — are contract law damages.  The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims,

---

[23]Id. at 6 ¶ 30.

[24]Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiffs' Claims ("Opposition to Motion to Dismiss"), Docket Entry No. 13, p. 10.

[25]Defendant Phillips 66 Company's Reply Supporting its Motion to Dismiss Plaintiffs' Claims ("Reply Supporting Motion to Dismiss"), Docket Entry No. 16, pp. 2-3.

they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact.

Rivera, 283 F.3d at 320-21 (internal citations omitted). The wrongs Plaintiffs allege -- strict products liability, negligence, and breach of express and implied warranties -- are products liability claims under Kansas law. Corvias Military Living, LLC v. Ventamatic, Ltd., 54 Kan. App. 2d 169, 173, 397 P.3d 441, 445 (Kan. Ct. App. 2017) (citing K.S.A. § 60-3302). Because Plaintiffs seek contractual damages, they have not alleged an injury in fact that would provide standing for a products liability claim.

### c. Costs to Mitigate Future Harm

Defendant argues that Plaintiffs' costs incurred to flush its gas tanks and protect against future risk of damage to the airplanes also do not confer standing.[26] Plaintiffs respond that the cases Defendant cited are distinguishable from Plaintiffs' claims because "Plaintiffs' alleged harm is not reliant on the potential criminal actions of a third party, or the actions of any third party at all."[27]

Even if the possible future harm is not reliant on a third party, to have standing based on future harm Plaintiffs must establish that the harm is certainly impending and they have not done so. In Clapper the Court held that "Respondents' contention

---

[26]Motion to Dismiss, Docket Entry No. 6, p. 13.

[27]Opposition to Motion to Dismiss, Docket Entry No. 13, p. 13.

that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending." Clapper, 133 S. Ct. at 1151. "Allegations of possible future injury are not sufficient." Id. at 1147 (quotations omitted). Plaintiffs argue "if plane-engine failure is not an imminent threatened harm, it is difficult to imagine what is."[28] Although engine failure may be a consequence of operating aircrafts with contaminated avgas, the Plaintiffs fail to present facts that establish that Phillips' avgas would have caused that extreme consequence. Because Plaintiffs' allegations only support a possible future injury instead of a certainly impending injury, they cannot confer standing.

d. KCPA Claim[29]

To have standing to sue under the KCPA the plaintiff must be a consumer. Doe 7 v. University of Kansas, Civil Action No. 16-2458-JTM, 2017 WL 4037704 at *2 (D. Kan. Sept. 13, 2017); Hayes v. Find Track Locate, Inc., 60 F. Supp. 3d 1144, 1151 (D. Kan. 2014). "In order to be a consumer under the KCPA, one must have been a

_____

[28]Id. at 13.

[29]The parties did not brief Plaintiffs' standing to bring a claim under the Kansas Consumer Protection Act. However, because a federal court always has jurisdiction to determine its own jurisdiction, the court will evaluate Plaintiffs' standing to bring this claim. Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1024 (1998).

party to the contract for purchase." <u>Hayes</u>, 60 F. Supp. 3d at 1151. "The KCPA's protection is limited to individuals who directly contract with suppliers for goods or services." <u>Id.</u> (citation omitted). Moreover, "'aggrieved' is a constitutional component to statutory standing under the KCPA. . . . In other words, the constitutional and statutory standing requirements overlap. If the consumer was not aggrieved, then there would not be a sufficient injury in fact to allow for constitutional standing." <u>Doe 7</u>, 2017 WL 4037704 at *3. "Under that requirement, the named plaintiff in a class action must allege and show that he has been personally injured." <u>Stein v. Sprint Corp.</u>, 22 F. Supp. 2d 1210, 1216 (D. Kan. 1998). Consumers who allege an economic loss qualify as "aggrieved" under the KCPA. <u>Gonzalez v. Pepsico, Inc.</u>, 489 F. Supp. 2d 1233, 1248-49 (D. Kan. 2007).

Plaintiffs allege that Plaintiff Reedy purchased avgas, but nowhere in the Complaint do Plaintiffs allege that T.C. Holdings purchased any avgas or otherwise entered a contract with Phillips.[30] Because T.C. Holdings was not a "party to the contract for purchase," T.C. Holdings is not a consumer under the KCPA. <u>Hayes</u>, 60 F. Supp. 3d at 2251. Therefore, T.C. Holdings lacks standing to bring a claim under the KCPA.[31] Plaintiff Reedy has standing to

---

[30]<u>See</u> Plaintiffs' Complaint, Docket Entry No. 1, pp. 5-6 ¶¶ 26-27.

[31]Moreover, Plaintiffs do not oppose Defendant's motion to dismiss T.C. Holding's KCPA claim.

bring a claim under the KCPA because he is a consumer who has allegedly suffered a loss as a result of a violation of the KCPA.

After carefully considering the parties' arguments the court concludes that Plaintiffs cannot establish Article III standing for their products liability claims -- which include their claims for strict products liability, negligence, and breach of express and implied warranty -- because they have not demonstrated injury in fact or a certainly impending injury. However, the court concludes that Plaintiff Reedy has standing to bring claims under the Kansas Consumer Protection Act.

## B.  Failure to State a Claim

In the alternative, Defendant moves to dismiss four of Plaintiffs' five causes of action for failure to state a claim upon which relief may be granted. Defendant does not move to dismiss Plaintiff Reedy's breach of implied warranty claim.[32] Because Plaintiffs do not oppose Defendant's motion to dismiss Plaintiffs' express warranty claims and T.C. Holding's KCPA claim,[33] those claims will be dismissed for failure to state a claim. The remaining claims under consideration for Defendant's Motion to Dismiss are Plaintiffs' strict products liability and negligence claims, T.C. Holdings' implied warranty claim, and Reedy's KCPA

---

[32]Motion to Dismiss, Docket Entry No. 6, p. 6.

[33]Opposition to Motion to Dismiss, Docket Entry No. 13, p. 8 n.2.

-13-

claim.  As discussed in Part A, the court will dismiss Plaintiffs'
strict products liability, negligence, and warranty claims for lack
of standing, but the court will nevertheless analyze those claims
under Rule 12(b)(6).

1.  <u>Standard of Review - Fed. R. Civ. P. 12(b)(6)</u>

Under Rule 8 of the Federal Rules of Civil Procedure a
pleading must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of
the pleadings and is "appropriate when a defendant attacks the
complaint because it fails to state a legally cognizable claim."
<u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert.</u>
<u>denied</u> <u>sub</u> <u>nom.</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002).
The court must accept the factual allegations of the complaint as
true, view them in a light most favorable to the plaintiff, and
draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a
plaintiff must plead "enough facts to state a claim to relief that
is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 127
S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949
(2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010). "Federal courts are required to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), claims based on invalid legal theories, even though they may be otherwise well-pleaded." Flynn v. State Farm Fire and Casualty Insurance Co. (Texas), 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing Neitzke v. Williams, 109 S. Ct. 1827, 1832 (1989)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 558) (quotations omitted); see also Exxon Mobil Corp. v. FX Networks, LLC, 39 F. Supp. 3d 868, 870-71 (S.D. Tex. 2014).

2. <u>Analysis</u>

   a. Strict Products Liability and Negligence Claims

Plaintiffs allege that "[t]he avgas was defective and inherently and unreasonably dangerous and unsafe for its intended use because it harmed the aircrafts in which it was used."[34] Defendant argues that "[b]ecause Plaintiffs have pleaded no facts indicating that they or their property sustained any actual physical harm, they have failed to state a products-liability claim under either a negligence or strict-liability theory, and the Court should therefore dismiss those claims."[35] Plaintiffs respond that:

> Plaintiffs have alleged property damage and seek the costs of "maintenance and <u>repair</u> that were necessary to account for the presence of contaminated avgas in the aircrafts." (Complaint, ¶ 31.) These repair costs to property other than the defective product are recoverable under the Product Liability Act.[36]

Defendant argues that "[o]ne mention of 'repair' in a 77-paragraph complaint, however, does not provide sufficient factual underpinnings necessary to show property damage, under even the most liberal interpretation of <u>Iqbal</u> and <u>Twombly</u>."[37] The court agrees. For the same reasons that the court has already concluded that Plaintiffs failed to establish an injury sufficient to support

---

[34]Plaintiffs' Complaint, Docket Entry No. 1, p. 10 ¶ 48.

[35]Motion to Dismiss, Docket Entry No. 6, p. 17.

[36]Opposition to Motion to Dismiss, Docket Entry No. 13, p. 14.

[37]Reply Supporting Motion to Dismiss, Docket Entry No. 16, p. 6.

standing to bring a products liability claim, the court concludes that Plaintiffs fail to state a claim under Rule 12(b)(6).

"For more than 35 years, the Kansas Product Liability Act, K.S.A. 60-3301 et seq., has governed all product liability actions, consolidating them into one basis for liability regardless of theory." Corvias Military, 54 Kan. App. 2d at 173. The Kansas Product Liability Act applies to actions based on "strict liability in tort, negligence, [and] breach of express or implied warranty . . . ." Id. (citing K.S.A. 60-3302(c)). It applies to "any claim or action brought for harm" and defines "harm" to include "property damage, personal injuries, and death." Id. The definition of "harm" "does not include 'direct or consequential economic loss'" caused by a defective product." Id. (quoting K.S.A. 60-3302(d)). "Economic loss is defined as 'loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business, . . .'" and "repair" costs. See id. (quoting Elite Professionals, Inc. v. Carrier Corp., 16 Kan. App. 2d 625, 633, 827 P.2d 1195 (Kan. Ct. App. 1992)); Northwest Arkansas Masonry, Inc. v. Summit Specialty Products, Inc., 29 Kan. App. 2d 735, 742, 31 P.3d 982 (Kan. Ct. App. 2001) ("[E]conomic loss includes damages for inadequate value, costs of repair, replacement costs, and loss of use of the defective product."). The economic loss doctrine "applies to both consumer and commercial buyers of defective products." Northwest Arkansas Masonry, 29 Kan. App. 2d at 741.

Plaintiffs only seek damages for economic loss. Plaintiffs'
statements that the avgas "harmed the aircrafts"[38] and that
Plaintiffs "suffered property damage"[39] are conclusory allegations
but provide no facts describing the damage to property. The
majority of Plaintiffs' Complaint indicates that Plaintiffs'
property sustained no actual damage, only "threaten[ed]" damage and
"risk" of damage.[40] Plaintiffs' argument that "repair" costs are
recoverable and that use of the word "repair" indicates an
allegation of damage fails because costs of repair are included in
economic loss. Therefore, Plaintiffs have failed to state a claim
for products liability and negligence.

b.    T.C. Holdings' Implied Warranty Claim

Defendant argues that "T.C. Holdings' implied-warranty claim
must be dismissed because the Complaint fails to allege the
required privity of contract between that Plaintiff and Phillips."[41]
Plaintiffs do not contend that T.C. Holdings is a consumer.
Plaintiffs argue instead that "Plaintiffs have alleged facts
supporting the reasonable inference that Defendant and Signature
are in an agency relationship and that, as a result, privity of

---

[38]Plaintiffs' Complaint, Docket Entry No. 1, p. 10 ¶ 48.

[39]Id. at 10 ¶ 56.

[40]Id. at 1 ¶ 1, 5 ¶ 22, 6 ¶ 30.

[41]Motion to Dismiss, Docket Entry No. 6, p. 19.

contract exists between T.C. Holdings and Defendant to support a valid implied-warranty claim."[42]

The Kansas Product Liability Act applies to actions based on breach of implied warranty. K.S.A. § 60-3302(c). Under Kansas law a plaintiff must allege contractual privity to bring an implied warranty claim if the defective product only caused economic loss. <u>Shawnee County, Kansas v. Daimler Trucks North America LLC</u>, Civil Action No. 15-4006-RDR-KGS, 2015 WL 1299355, at *4-5 (D. Kan. March 23, 2015); <u>Limestone Farms, Inc. v. Deere & Co.</u>, 29 Kan. App. 2d 609, 614, 29 P.3d 457, 461 (Kan. Ct. App. 2001) (citing <u>Professional Lens Plan, Inc. v. Polaris Leasing Corp.</u>, 234 Kan. 742, 755, 675 P.2d 887 (Kan. 1984)). Courts have removed the privity requirement for consumer transactions, but the requirement remains for non-consumer transactions. <u>City of Winfield, Kansas v. Key Equipment & Supply Co.</u>, Civil Action No. 11-1358-CM-KGS, 2012 WL 1207256 at *3 (D. Kan. April 11, 2012).

Relying on <u>Meyers v. Garmin International, Inc.</u>, Civil Action No. 13-2416-CM-GLR, 2014 WL 273983 at *7 (D. Kan. Jan. 24, 2014), Plaintiffs argue that "[u]nder Kansas law, an agency relationship can establish privity sufficient to state an implied warranty claim."[43] <u>Meyers</u> recognized the general rule that plaintiffs must establish privity to assert an implied warranty claim in

---

[42]Opposition to Motion to Dismiss, Docket Entry No. 13, p. 15.

[43]<u>Id.</u> at 10.

nonconsumer transactions. Meyers, 2014 WL 273983 at *7. The court held that the transaction was a consumer transaction and therefore privity was not required. Id. In the alternative the court reasoned "[e]ven if privity were required" plaintiffs alleged facts sufficient to survive a motion to dismiss because plaintiffs alleged an agency relationship and "[u]nder Kansas law, an agency relationship can establish privity sufficient to state an implied warranty claim." Id. (citing Daitom, Inc. v. Pennwalt Corp., Civil Action Nos. 80-2080, 80-2087, 1987 WL 93958 at *4-5 (D. Kan. Jan. 30, 1987)). However, the case that Meyers relied on for that rule, Daitom, applied Pennsylvania, not Kansas, law. See Daitom, 1987 WL 93958 at *1 ("we first note that the parties agree that Pennsylvania law governs this issue (as well as all of the other legal issues presented . . .)"). The court is unaware of any other Kansas case that allows an agency relationship to establish privity.

Plaintiffs' Complaint alleges that Reedy purchased avgas for two aircraft, that T.C. Holdings owns the two aircraft, and that Reedy is a shareholder of T.C. Holdings.[44] Because Plaintiffs have alleged no facts demonstrating privity between T.C. Holdings and Phillips, T.C. Holding's implied warranty claim will be dismissed. Moreover, even if the court were to follow the Meyers' holding that an agency relationship can establish privity, the court concludes

---

[44]Plaintiffs' Complaint, Docket Entry No. 1, pp. 5-6 ¶¶ 24-27.

that Plaintiffs have not pled facts demonstrating any privity between T.C. Holdings and Phillips' agent, Signature, because Plaintiffs do not allege that T.C. Holdings purchased any avgas. Therefore this claim will be dismissed.

### c. Reedy's KCPA Claim

Plaintiffs allege that

74. Phillips engaged in unconscionable and deceptive acts and practices, by:

    a. Producing and distributing avgas that was defective or contaminated and unfit for consumption;

    b. Representing that its avgas was of high quality when that was not the case; and

    c. Distributing avgas without properly testing it or applying appropriate quality control processes.

75. The unfair and deceptive actions of Defendant were committed in connection with consumer transactions; namely, the distribution and sale of contaminated avgas.

76. Reedy and others suffered damages as a result of Defendant's actions.[45]

Defendant argues that Reedy's KCPA claim fails because the pleading does not satisfy Rule 9(b)'s particularity requirement and because it does not allege reliance.[46] Plaintiffs respond that under the KCPA Reedy is not required to plead his claim with particularity or

---

[45]Id. at 12 ¶¶ 74-76.

[46]See Motion to Dismiss, Docket Entry No. 6, pp. 20-22.

to allege reliance.[47]  Both parties cite various cases from Kansas district courts to support their arguments.

The KCPA "protect[s] consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. § 50-623(b).  The KCPA provides two paths for supplier liability -- under Section 50-626 for "any deceptive act or practice," or under Section 50-627 for "any unconscionable act or practice."  Id. §§ 50-626(a), 50-627(a).  To bring an action under the KCPA the plaintiff must allege plausible facts that the party is "aggrieved."  K.S.A. 50-634(b).  That is, under both Sections 50-626 and 50-627 the plaintiff must show that there was a causal connection between the alleged violation of the KCPA and the claimed injury.  Finstad v. Washburn University of Topeka, 252 Kan. 465, 471-73, 845 P.2d 685 (Kan. 1993).[48]  For claims of misrepresentation, "Plaintiffs generally demonstrate this causal connection through reliance on

_____

[47]See Opposition to Motion to Dismiss, Docket Entry No. 13, pp. 16-18.

[48]Finstad painstakingly analyzed the definition of the word "aggrieved" to require a causal connection, and other courts have followed its reasoning.  See Weckhorst v. Kansas State University, 241 F. Supp. 3d 1154, 1177-78 (D. Kan. 2017); Queen's Park Oval Asset Holding Trust v. Belveal, 394 P.3d 901, 2017 WL 2001609 at *4-5 (Kan. Ct. App. May 12, 2017); Schneider v. Liberty Asset Management, 45 Kan. App. 2d 978, 985, 251 P.3d 666, 671 (Kan. Ct. App. 2011); and Rinehart v. Saint Luke's South Hospital, Inc., Civil Action No. 10-2209-SAC, 2011 WL 3348234 at *7-8 (D. Kan. Aug. 3, 2011).  Plaintiffs' cited case, Midland Pizza, LLC v. Southwestern Bell Telephone Company, Civil Action No. 10-2219-CM-GLR, 2010 WL 4622191, predates these cases.  Although the court in Midland Pizza held that Section 50-626 states that a deceptive act may be a violation "whether or not any consumer has in fact been misled," the plaintiff must still allege that she is "aggrieved."

-22-

defendant's misrepresentations." <u>Rasnic v. FCA US LLC</u>, Civil
Action No. 17-2064-KHV, 2017 WL 6406880 at *8 (D. Kan. Dec. 15,
2017). The parties dispute whether the KCPA requires a plaintiff
to plead its claims with particularity under the Rule 9(b)
standard. After a careful review of the cited cases and the
court's own research, the court concludes that the pleading
requirements under Section 50-626 and Section 50-627 of the KCPA
differ.

### (i) Section 50-626: Deceptive Act or Practice

Section 50-626 of the KCPA states "[n]o supplier shall engage
in any deceptive act or practice in connection with a consumer
transaction" and provides a lengthy, nonexclusive list of which
deceptive acts and practices are violations of the Act. K.S.A.
§ 50-626. Section (b)(1) states "[d]eceptive acts and practices
include . . . : (1) Representations made knowingly or with reason
to know that . . ." and lists seven examples of representations.
K.S.A. § 50-626(b)(1). Sections (b)(2) and (b)(3) state
"[d]eceptive acts and practices include . . . : (2) the willful
use, in any oral or written representation, of exaggeration,
falsehood, innuendo or ambiguity as to a material fact; (3) the
willful failure to state a material fact, or the willful
concealment, suppression or omission of a material fact." K.S.A.
§§ 50-626(b)(2)-(b)(3). Section 50-626(b)(1) does not require
intent, while Sections 50-626(b)(2) and (b)(3) require intent. <u>See</u>

-23-

K.S.A. §§ 50-626(b)(1)-(b)(3); <u>Doe 7</u>, 2017 WL 4037704 at *4 ("Kansas courts have reviewed the legislative history behind the KCPA, and distinguish Kan. Stat. Ann. § 50-626(b)(1)—where intent is not required—and §§ (b)(2) and (b)(3)—where intent is required.").

Plaintiffs argue that "there is no bright-line rule requiring KCPA claims to be pleaded with Rule 9 particularity. Indeed, cases applying the particularity standard tend to center on fraudulent misrepresentations."[49] Plaintiffs rely on <u>Tomlinson v. Ocwen Loan Servicing, LLC</u>, Civil Action No. 15-01105-EFM-KGG, 2017 WL 3873754 (D. Kan. Sept. 5, 2017), and <u>Rogers v. Bank of America, N.A.</u>, Civil Action No. 13-1333-CM, 2014 WL 3091925 (D. Kan. July 7, 2014), to argue that KCPA claims do not need to be plead with particularity.[50] Defendant argues that "<u>all</u> KCPA claims must meet Rule 9(b)'s requirements—as the vast majority of Kansas federal courts have held time after time."[51]

The court in <u>Tomlinson</u> cited <u>Rogers</u> and <u>Sanchez v. Bank of America, N.A.</u>, Civil Action No. 6:14-1142-JTM-TJJ, 2014 WL 5800203 (D. Kan. Nov. 7, 2014), to support the statement "[a]lthough some of the claims sound in fraud, KCPA claims need not be pleaded with particularity." <u>Tomlinson</u>, 2017 WL 3873754 at *2. The courts in

---

[49]Opposition to Motion to Dismiss, Docket Entry No. 13, p. 16.

[50]<u>Id.</u> at 17.

[51]Reply Supporting Motion to Dismiss, Docket Entry No. 16, p. 8.

_Sanchez_ and _Rogers_ both reasoned that the KCPA does not require particularity because "[t]he key difference is that the KCPA does not include an 'intent to defraud' requirement." _Rogers_, 2014 WL 3091925 at *3; _Sanchez_, 2014 WL 5800203 at *6 (quoting _Rogers_, 2014 WL 3091925 at *3). That conclusion was later rejected in _Doe 7_, which held that the plaintiff is required to plead KCPA with particularity in accordance with Rule 9(b) because "intent is a requirement for some violations of the KCPA[,] [c]ontra _Sanchez_." _Doe 7_, 2017 WL 4037704 at *4-5 (referencing Sections 50-626(b)(2) and (b)(3)).

Although Defendant is correct that some Kansas federal district courts have applied the Rule 9(b) pleading standard to all KCPA claims, the majority of courts only apply the Rule 9(b) pleading standard to claims under Section 50-626, not to claims under Section 50-627. _See, e.g._, _Doe 7_, 2017 WL 4037704 at *4-5; _Weckhorst_, 241 F. Supp. 3d at 1176 ("[Rule 9(b)'s] provision applies to allegations of deceptive trade practices under the KCPA") (internal quotation omitted); _Maxwell_, 2017 WL 4037732 at *4 (holding that the plaintiffs adequately pled with the requisite particularity "deceptive acts or practices that violate those sections of the KCPA" but did not mention particularity in its analysis of the allegations under Section 50-627). Requiring Rule 9(b) particularity only for claims under Section 50-626 is logical because "deceptive acts and practices" deal with misrepresentations, while "unconscionable acts" do not necessarily

include any representations. Therefore, the court concludes that Plaintiffs must plead claims under Section 50-626 of the KCPA with particularity in accordance with Rule 9(b) -- i.e., Plaintiffs "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." <u>Weckhorst</u>, 241 F. Supp. 3d at 1176 (citation omitted).

In addition to Rule 9(b)'s particularity requirement, to adequately plead a violation of Section 50-626(b)(2) or (b)(3) the plaintiff must allege "willful" misconduct. <u>Maxwell</u>, 2017 WL 4037732 at *5; <u>CitiMortgage, Inc. v. White</u>, Civil Action No. 112,098, 2016 WL 199059 at *2-3, 364 P.3d 579 (Kan. Ct. App. Jan. 15, 2016). Plaintiffs do not identify the particular subsection of Section 50-626 under which they bring claims, fail to meet the particularity requirements of Rule 9(b), and do not allege that Defendant acted willfully. Plaintiffs thus fail to state a claim under Section 50-626 of the KCPA. Because it is possible that Plaintiffs could plead facts that might cure this deficiency, the court will grant Plaintiffs leave to amend their Complaint as to this claim.

### (ii) Section 50-627: Unconscionable Act or Practice

Section 50-627 of the KCPA states that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." K.S.A. § 50-627(a). Sections 50-627(b)(1)-(b)(6) provide a list of nonexclusive examples of unconscionable

acts. K.S.A. § 50-627(b). To state a claim under Section
50-627, plaintiffs must allege unequal bargaining power and
deceptive bargaining conduct. <u>Rasnic</u>, 2017 WL 6406880 at *8;
<u>Tomlinson</u>, 2017 WL 3873754 at *4; <u>Louisburg Building & Development
Co., L.L.C. v. Albright</u>, 45 Kan. App. 2d 618, 646, 252 P.3d 597,
616 (Kan. Ct. App. 2011). Plaintiffs are bound by this pleading
requirement even if they allege one of the listed violations under
subsections of 50-627(b)(1)-(b)(6). <u>Rasnic</u>, 2017 WL 6406880 at *8.
Because Plaintiffs fail to allege unequal bargaining power and
deceptive bargaining conduct, and the requisite causal connection,
they have failed to state a claim under Section 50-627 of the KCPA.
The court will allow Plaintiffs to amend their Complaint to
properly allege a violation of this section of the KCPA.

### III. <u>Defendant's Motion to Strike</u>

Defendant argues that: (1) the Complaint demonstrates that
Plaintiffs cannot maintain nationwide class claims for products
liability and breach of warranty claims because a class would
require the court to apply the laws of all fifty states; (2) the
Kansas class allegations under the KCPA should be stricken because
individual questions of law and fact will predominate common
questions; and (3) Plaintiffs lack standing "to pursue representa-
tive claims for putative class members who allegedly were injured
in [states outside Kansas]".[52]

---

[52]<u>See</u> Motion to Strike, Docket Entry No. 7, pp. 11, 12-13, 20.

## A. Standard of Review

Federal Rule of Civil Procedure 23 requires courts to "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Courts have wide discretion in determining whether to certify a class, but they must exercise that discretion within the bounds of Rule 23. Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996) (citing Gulf Oil Co. v. Bernard, 101 S. Ct. 2193, 2200 (1981)). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle and Jacquelin, 94 S. Ct. 2140, 2153 (1974) (quoting Miller v. Mackey International, Inc., 452 F.2d 424, 427 (5th Cir. 1971)). "An action may proceed *only* if the party seeking certification demonstrates that all four requirements of Rule 23(a) are met, and that at least one of three requirements of Rule 23(b) are met." Vizena v. Union Pacific Railroad Co., 360 F.3d 496, 503 (5th Cir. 2004) (per curiam); see also Gene and Gene LLC v. BioPay LLC, 541 F.3d 318, 325 (5th Cir. 2008) (party seeking certification bears the burden of proof). Under Rule 23(a) the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) states in relevant part that a class action is appropriate if the moving party establishes the prerequisites set forth in Rule 23(a) and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)].

Fed R. Civ. P. 23(b)(3).

The party seeking class certification must affirmatively demonstrate compliance with Rule 23 and "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Certification is proper only if "'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Id. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." Id.

Defendant cites Federal Rules of Civil Procedure 12(f), 12(b)(6), and 23(d)(1)(D) as the bases for its Motion to Strike.[53] The court concludes the appropriate standard is Rule 12(b)(6), and the court will treat Defendants' Motion to Strike as a motion to

---

[53]Id. at 1.

dismiss. A Rule 12(b)(6) motion is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23. Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." John v. National Security Fire and Casualty Co., 501 F.3d 443, 445 (5th Cir. 2007). The court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." General Telephone Co. of the Southwest v. Falcon, 102 S. Ct. 2364, 2372 (1982). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id.; Castano, 84 F.3d at 744 ("A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met."); see also Myart v. Glosson, Civil Action No. SA-14-831-XR, 2014 WL 6612008, at *5 (W.D. Tex. Nov. 20, 2014) ("Courts have cited Falcon and John to strike or dismiss [under Rule 12(f) or Rule 12(b)(6)] class-action allegations from a

complaint when the pleadings clearly fail to allege facts to support the minimum requirements of Rule 23.") (citations omitted).

## B. **Analysis**

### 1.  Plaintiffs' Nationwide Class Claims

The Complaint defines a "Nationwide Class" as:  "All persons and/or entities who purchased Phillips' contaminated avgas in the United States and all owners of aircrafts that were filled with Phillips' contaminated avgas in the United States."[54]  Defendant argues that Plaintiffs' claims on behalf of their proposed Nationwide Class should be stricken because Plaintiffs cannot satisfy Federal Rule of Civil Procedure 23(b)(3), which requires that the court find "that 'questions of law or fact common to the class members [must] predominate over any questions affecting individual members'" before certifying a class.[55]  Defendant argues that resolving Plaintiffs' claims would "require the Court to apply the products-liability and warranty laws of all fifty states—which means individual questions of law and fact will predominate over common ones."[56]  Plaintiffs respond that "Defendant's motion should

---

[54]See Plaintiffs' Complaint, Docket Entry No. 1, p. 7 ¶ 32.

[55]See Motion to Strike, Docket Entry No. 7, pp. 11-16. Plaintiffs do not dispute that this is the applicable subsection of Fed. R. Civ. P. 23(b).

[56]See id. at 11.  Defendant argues that this court, as a federal court sitting in diversity, must apply Texas's choice of law rule.  See id. at 11-12 (citing Cole, 484 F.3d at 724; Danner v. Staggs, 680 F.2d 427, 429 (5th Cir. 1982).  Under Texas law, in the absence of a choice of law clause, the Texas Supreme Court (continued...)

be denied as premature" because "Plaintiffs have not moved for class certification," "Defendant has yet to file an Answer," and "[n]o discovery has taken place."[57]  Plaintiffs argue that "Defendant's motion fails because it is centered on a flawed premise: that the Court will necessarily be forced to apply the laws of all 50 states."[58]  Plaintiffs reason that "[d]iscovery may reveal that Defendant distributed its contaminated avgas to locations in less than all 50 states. . .[and] information on the geographic scope of Defendant's contaminated avgas remains within Defendant's exclusive control."[59]

Defendant responds that

> Plaintiffs do not deny that the nationwide class they have alleged (and now try to shy away from) fails to

---

[56](...continued)
applies the "most-significant relationship test" from the Restatement (Second) of Conflict of Laws to determine which state's laws apply.  Danner, 680 F.2d at 429 (The test "requires a determination of what state has the 'most significant relationship' to the occurrence and the parties under general principles set forth in s 6 of the Restatement (Second).").  T.C. Holdings is a Delaware corporation with its principal place of business in Kansas, Reedy is a Kansas resident who bought avgas in Kansas, and Phillips is a Delaware corporation with its principal place of business in Texas.  See Complaint, Docket Entry No. 1, p. 2 ¶¶ 2-4. Plaintiffs allege that contaminated avgas was found or purchased in various states and bring products liability and warranty claims on behalf of avgas purchasers nationwide.  See Complaint, Docket Entry No. 1, p. 7 ¶ 32.  Thus it is unlikely, and Plaintiffs do not argue, that Texas law would apply to every transaction.

[57]Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss or Strike Plaintiffs' Class Allegations ("Opposition to Motion to Strike"), Docket Entry No. 12, p. 4.

[58]Id. at 5.

[59]Id.

meet Rule 23's predominance requirement. They likewise do not dispute that Texas's choice-of-law rules mean that various other states' product-liability and warranty laws will apply to resolve the proposed nationwide class's claims. Neither do Plaintiffs refute that the products-liability and warranty laws indeed vary from state-to-state, as Phillips has described. Instead, they ask the Court to defer ruling on the class issues until later—even though it is clear from the face of their Complaint that common questions of law and fact will not predominate.[60]

Plaintiffs' argument that the court may not engage in the class certification analysis at the pleading stage lacks merit because, as discussed above, district courts may evaluate the sufficiency of class allegations at the pleading stage. To satisfy the predominance requirement of Rule 23(b)(3), Plaintiffs must establish that issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over issues that are subject only to individualized proof. See Castano, 84 F.3d at 741; Allison v. Citgo Petroleum Corp., 151 F.3d at 419, 425 (5th Cir. 1998). Rule 23(b)(3)'s predominance requirement is "more stringent" and "far more demanding than" the commonality requirement of Rule 23(a). Amchem Products, Inc. v. Windsor, 117 S. Ct. 2231, 2243, 2250 (1997). "[C]ommon issues must constitute a significant part of the individual cases." Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986).

---

[60]Defendant Phillips 66 Company's Reply Supporting its Motion to Dismiss or Strike Plaintiffs' Class Allegations ("Reply Supporting Motion to Strike"), Docket Entry No. 17, p. 10 (internal citations omitted).

The Fifth Circuit recognizes that "in a class action governed by the laws of multiple states . . . variations in state law may swamp any common issues and defeat predominance." Cole, 484 F.3d at 724 (internal quotations omitted) (citing Castano, 84 F.3d at 741). In Cole GM argued that the district court erred in certifying a nationwide class of owners of vehicles with defective airbags because of variations in state substantive express and implied warranty law. Id. at 718, 724-25. The Fifth Circuit agreed:

> We conclude that plaintiffs did not sufficiently demonstrate the predominance requirement because they failed both to undertake the required "extensive analysis" of variations in state law concerning their claims and to consider how those variations impact predominance. Plaintiffs' assertion of predominance relied primarily on the textual similarities of each jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction for express and implied warranties. Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction.
>
> As we explain below, there are numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions that the plaintiffs failed to "extensively analyze" for their impact on predominance.[61]

Id. at 725-26 (citations omitted). Other courts have also rejected class certification when the laws of different states will apply to

_____

[61]"Specifically, the laws of the jurisdictions vary with regards to (1) whether plaintiffs must demonstrate reliance, (2) whether plaintiffs must provide notice of breach, (3) whether there must be privity of contract, (4) whether plaintiffs may recover for unmanifested vehicle defects, (5) whether merchantability may be presumed and (6) whether warranty protections extend to used vehicles." Cole, 484 F.3d at 726.

individual class members.  See, e.g., In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002).

In this action different state products liability laws will apply to the class members' strict liability and negligence claims. Castano, 84 F.3d at 742 n.15 ("Products liability law also differs among states.  Some states do not recognize strict liability. Among the states that have adopted the Restatement, there are variations.").  Different warranty laws will also apply to class members' claims.  Cole, 484 F.3d at 724-26; Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 681 (Tex. 2004) ("The putative class members are domiciled in the fifty states and the District of Columbia.  All these fifty-one relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated for a breach of warranty.").  Plaintiffs have failed to "extensively analyze" these variations in state substantive law for their impact on predominance.  Cole, 484 F.3d at 725-26.  Instead, Plaintiffs argue that discovery may reveal a class of plaintiffs that reside in less than fifty states and that therefore "the states at issue may have overlapping laws with only minor distinctions."[62]

The court concludes that the burden of applying the products liability and warranty laws of each class member's state defeats predominance and, thus, nationwide class certification.  See Cole,

_____

[62]Opposition to Motion to Strike, Docket Entry No. 12, p. 5.

484 F.3d at 724-25; Castano at 752; Spence v. Gloack, Ges.m.b.H., 227 F.3d 308, 316 (5th Cir. 2000). Because Plaintiffs have failed to satisfy Rule 23(b)(3)'s predominance requirement, the court will grant Defendant's Motion to Dismiss as to all claims asserted by Plaintiffs on behalf of a putative Nationwide Class for strict products liability, negligence, and express and implied warranties.[63]

2. Plaintiffs' Kansas Class Claim

Section 50-634(d) of the KCPA states that "[a] consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by an act or practice: (1) Violating any of the acts of practices specifically proscribed in K.S.A. 50-626, 50-627 . . ." K.S.A. § 50-634(d)(1). The Complaint defines a Kansas subclass as: "All persons and/or entities who purchased Phillips' contaminated avgas in Kansas and all owners of aircrafts that were filled with Phillips' contaminated avgas in Kansas."[64] Defendant argues that Plaintiffs' KCPA claims based on misrepresentation should be dismissed because each class member must establish an individual causal connection

---

[63]In the last section of its Motion to Strike, Defendant argues that Plaintiffs lack standing to bring claims on behalf of a class under the laws of states other than Kansas. See Motion to Strike, Docket Entry No. 7, pp. 18-20. Because the court will dismiss Plaintiffs' nationwide class for failure to satisfy Rule 23(b)(3), the court will not address these arguments.

[64]Plaintiffs' Complaint, Docket Entry No. 1, p. 7 ¶ 32.

and therefore "[c]ommon questions of law and fact cannot predominate in these circumstances."[65]   Defendant argues that Plaintiffs' KCPA claims based on unconscionable acts also require individualized inquiries of each class member, rendering the claim "inappropriate for class treatment under Rule 23(b)(3)."[66]

a.   Section 50-626: Deceptive Act or Practice

Each class member must be aggrieved to have a cause of action under the KCPA. Johnson v. MKA Enterprises, Inc., Civil Action No. 112,049, 2015 WL 4487037 at *5, 353 P.3d 470 (Kan. Ct. App. 2015). The court in Johnson relied on Benedict v. Altria Group, Inc., 241 F.R.D. 668 (D. Kan. 2007), to conclude that because "[t]he evidence to establish this causal connection will vary from class member to class member . . . the causal connection/reliance element under the KCPA will destroy most class certifications because of the individualized fact issues." Id. (citing Benedict, 241 F.R.D. at 677-80). Nieberding v. Barrette Outdoor Living, Inc. limited the holding of Benedict:

> The Court believes that the holding in Benedict is limited to misrepresentation cases and that suits alleging omission of a material fact present questions suited to class actions. . . . the Court believes that proving causation on an individual basis is not required in every case under § 50-626. Specifically, the Court believes that an individualized showing is not required in an omission case, such as the one alleged here. To prevail on an omission claim, a plaintiff must show that the defendant had a duty to disclose a "material" fact.

---

[65]Motion to Strike, Docket Entry No. 7, p. 17.

[66]Id. at 18.

-37-

302 F.R.D. 600, 615 (D. Kan. 2014). As discussed in Part B.2.c.(i) above, different subsections of Section 50-626 have different pleading requirements but Plaintiffs have not specified under which subsections of Section 50-626 they bring their causes of action. Individualized allegations are necessary for some, but not all, subsections of Section 50-626. Because the court will allow Plaintiffs to amend their Complaint as to the KCPA claims, the court will allow Plaintiffs to reallege the Kansas subclass in an amended complaint.

      b.    Section 50-627: Unconscionable Act or Practice

Section 50-627 of the KCPA provides a nonexclusive list of acts or practices that are considered unconscionable. K.S.A. 50-627(b)(1)-(b)(7). Defendant argues that "only one could possibly apply to Plaintiffs' assertions . . . namely, that Phillips's alleged conduct deprived Plaintiffs of a 'material benefit from the subject of the transaction.'"[67] Defendant cites <u>Nieberding</u> to argue that this "material benefit" subsection necessarily requires individualized inquiries of each class member and therefore is not suitable for class certification as a matter of law.[68]

In <u>Nieberding</u> the court held:

> Defendants argue that the issue of whether each plaintiff was able to receive a "material benefit" from

---

[67]<u>Id.</u> (citing K.S.A. § 50-627(b)(3)).

[68]<u>Id.</u>; Reply Supporting Motion to Strike, Docket Entry No. 17, p. 16.

> purchasing the railing product is not suitable for class
> certification because it requires individualized
> inquiries into each class member's subjective belief.
> The Court agrees. . . . As a result, the Court concludes
> that a showing of unconscionability through the material
> benefit factor is not suitable for Rule 23(b)(3)
> certification.
>
> However, plaintiff also argues that the alleged
> defect means that the price for the [product] grossly
> exceeded what was readily obtainable in similar
> transactions. This factor for unconscionability can be
> shown objectively, with common proof. Defendants do not
> argue otherwise. Furthermore, causation under
> § 50-634(d) presents no problems—should plaintiff prove
> that defendants acted unconscionably in selling the class
> a product that "grossly" exceeded its worth, that will
> necessarily have caused harm to the class. Thus, the
> Court concludes that common issues predominate
> plaintiff's unconscionability claim under the KCPA.

Nieberding, 302 F.R.D. at 616. As with Section 50-626, different

pleading requirements to bring a class action apply to different

subsections of Section 50-627. Again Plaintiffs have not specified

under which subsection of Section 50-627 they seek to bring a cause

of action. Because the court will allow Plaintiffs to amend their

Complaint for the KCPA claims, the court will allow Plaintiffs to

reallege the Kansas class claims for this section of the KCPA as

well.

## IV. Conclusion and Order

For the reasons stated above, Defendant Phillips 66 Company's

Motion to Dismiss Plaintiffs' Claims (Docket Entry No. 6) is

**GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims for strict

products liability and negligence are **DISMISSED** for lack of

standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Plaintiffs' claim for breach of express warranty is **DISMISSED** for lack of standing pursuant to Rule 12(b)(1) and because Plaintiffs do not oppose Defendant's motion to dismiss that claim. Plaintiffs' claim for breach of implied warranty is **DISMISSED** as to Reedy for lack of standing pursuant to Rule 12(b)(1) and is **DISMISSED** as to T.C. Holdings for lack of standing pursuant to Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). T.C. Holding's claim under the KCPA is **DISMISSED** for lack of standing pursuant to Rule 12(b)(1) and because Plaintiffs do not oppose Defendant's motion to dismiss that claim. Defendant's motion to dismiss Reedy's KCPA claim is **DENIED**, and Plaintiffs' request to amend as to that claim is **GRANTED**. Defendant Phillips 66 Company's Motion to Strike Plaintiffs' Class Allegations (Docket Entry No. 7) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' strict products liability, negligence, and warranty claims on behalf of a Nationwide Class are **DISMISSED** because Plaintiffs cannot establish predominance, a necessary prerequisite for class certification. Although the court is skeptical that Plaintiff Reedy can maintain a KCPA claim on behalf of himself and putative Kansas subclass members, the court will allow Reedy twenty days from the entry of this Memorandum Opinion and Order in which to amend his Complaint to properly allege a claim under Sections 50-626 and 50-627 of the

KCPA and to properly define a Kansas subclass and move for certification demonstrating that he can meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).

**SIGNED** at Houston, Texas, on this the 20th day of March, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE